## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **OMNI MEDSCI, INC.,**<br><br>     ***Plaintiff***,<br><br>**v.**<br><br>**SAMSUNG ELECTRONICS, CO. LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG SEMICONDUTOR, INC.,**<br><br>     ***Defendants.*** | **Civil Action No. 2:26-CV-356**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Omni MedSci, Inc., by and through its undersigned counsel, files this Complaint against Defendants Samsung Electronics, Co. Ltd., Samsung Electronics America, Inc., and Samsung Semiconductor, Inc. (collectively, "Samsung" or "Defendants") for infringement of United States Patent Nos. 10,126,283 ("the '283 Patent"); 11,241,156 ("the '156 Patent"); 11,596,311 ("the '311 Patent"); 11,678,805 ("the '805 Patent"); 11,992,291 ("the '291 Patent"); 12,426,788 ("the '788 Patent"); 12,588,820 ("the '820 Patent"); and 12,599,305 ("the '305 Patent") (collectively, "Asserted Patents") (copies of the Asserted Patents are attached as Exhibits 1–8, respectively), and alleges as follows:

## NATURE OF THE ACTION

1.    This is a civil action for infringement of the Asserted Patents arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*, to obtain damages and injunctive relief resulting from Defendants' unauthorized actions of making, having made, using, selling, having

1

sold, offering to sell, importing, or having imported into the United States products that infringe or enable the infringement of one or more claims of the Asserted Patents.

## THE PARTIES

2. Plaintiff Omni MedSci, Inc. ("Omni MedSci" or "Plaintiff") is a corporation organized and existing under the laws of the state of Michigan with a place of business at 1718 Newport Creek Drive, Ann Arbor, Michigan 48103.

3. On information and belief, Defendant Samsung Electronics Co., Ltd. ("SEC") is a corporation organized and existing under the laws of the Republic of Korea.  SEC has a principal place of business at 129, Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-Do, Korea 443-742.

4. On information and belief, Defendant Samsung Electronics America, Inc. ("SEA") is a wholly owned subsidiary of SEC.  SEA is organized and existing under the laws of New York with a principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

5. On information and belief, SEA is registered to do business in the State of Texas and has been since at least June 10, 1996.  SEA maintains offices and/or other facilities within this District, including at least at 6625 Excellence Way, Plano, Texas 75023.

6. SEA may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

7. On information and belief, Samsung Semiconductor, Inc. ("SSI") is a wholly owned subsidiary of SEC.  SSI is organized and existing under the laws of the State of California, with its principal place of business at 3665 North First Street, San Jose, California 95134.

8. On information and belief, SSI is registered to do business in the State of Texas. SSI maintains offices and/or other facilities within this District, including at least at 6625 Excellence Way, Plano, Texas 75023.

9.      On information and belief, SSI may be served with process through its registered agent, CT Corporation, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

10.      Upon information and belief, SEA and SSI employ full-term personnel such as sales personnel and engineers in this District.

11.      Upon information and belief, SEC conducts all or substantially all of its activities in the United States through its wholly owned and controlled subsidiary SEA.  Alternatively, SEC and SEA form a joint business enterprise such that the performance by one is attributable to the other.

12.      SEC, SEA, and SSI, are referred to collectively as "Samsung."

13.      Samsung designs, manufactures, makes, uses, markets, offers to sell, sells, and/or imports remote sensing systems, such as cell phones and headsets, that incorporate and use proximity or time-of-flight ("ToF") sensors, including products accused of infringement in this Complaint, into the United States, including this Judicial District.  In addition, Samsung has authorized sellers and sales representatives in the United States and in this Judicial District that offer to sell and sell products pertinent to this Complaint.

## JURISDICTION AND VENUE

14.      Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 13 above.

15.      Jurisdiction and venue for this action are proper in this Judicial District.

16.      This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

17.     This Court has personal jurisdiction over Samsung at least because, through SEC's, SEA's, and SSI's own acts and/or through the acts of each other acting as its agent, representative, or alter ego, they (i) have a presence or regular and established place of business in the State of Texas and this Judicial District; (ii) have purposefully availed themselves of the rights and benefits of the laws of the State of Texas and this Judicial District; (iii) have done and are doing substantial business in the State of Texas and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including their one or more acts of infringement in the State of Texas and this Judicial District; (iv) maintain continuous and systematic contacts in the State of Texas and this Judicial District; and/or (v) place products alleged to be infringing in this Complaint in the stream of commerce, directly or through intermediaries, with awareness that those products are likely destined for use, offer for sale, sale, and/or importation in the State of Texas and this Judicial District.

18.     For example, Samsung has authorized retailers and distributors in the State of Texas and this Judicial District for the products alleged to be infringing in this Complaint, and Samsung has derived substantial revenues from their infringing acts occurring within the State of Texas and this Judicial District.

19.     Defendants have each established sufficient minimum contacts with the State of Texas and this Judicial District such that they should reasonably and fairly anticipate being brought into court in the State of Texas, including this Judicial District, without offending traditional notions of fair play and substantial justice; and Defendants have purposefully directed activities at residents of the State of Texas, including this Judicial District.  Moreover, the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities.  On

4

information and belief, a substantial part of the events giving rise to Plaintiff's claims, including acts of patent infringement, have occurred in the State of Texas, including this Judicial District.

20. Venue is proper in this Judicial District as to Defendants under 28 U.S.C. §§ 1391 or 1400(b).

21. As foreign entities, venue is proper as to SEC under 28 U.S.C. § 1391(c)(3). *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) (holding that "[t]he Court's recent decision in *TC Heartland* does not alter" the application of the general venue statute to foreign defendants).

22. Venue is proper as to SEA under 28 U.S.C. § 1400(b) because it has offered to sell or sold products accused of infringement to actual or potential customers located in this District and has a regular and established place of business in this District, as alleged above.

23. Venue is proper as to SSI under 28 U.S.C. § 1400(b) because it has offered to sell or sold products accused of infringement to actual or potential customers located in this District and has a regular and established place of business in this District, as alleged above.

## JOINDER

24. Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 23 above.

25. Joinder is proper under at least Rule 20 of the Federal Rules of Civil Procedure and 35 U.S.C. § 299 at least because Defendants' infringing conduct as alleged herein arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the U.S., offering for sale, and/or selling of constituents of the same accused systems, and questions of fact common to all Defendants will arise in this action.

5

26.    SEC, SEA, and SSI each make, use, import, offer for sale, and/or sell remote sensing systems that incorporate and use proximity or ToF sensors, including Samsung smartphones and headsets.

27.    Each Defendant is accused of infringing the Asserted Patents by, inter alia, making, using, offering for sale and/or selling measurement systems comprising Samsung's remote sensing systems.

28.    Based on the above, factual questions relating to SEC, SEA, and SSI, infringement will substantially overlap.

## BACKGROUND

### Dr. Mohammed Islam and Omni MedSci, Inc.

29.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 28 above.

30.    Dr. Islam received his B.S. degree in 1981, a M.S. degree in 1983, and a Sc.D. degree in 1985, all in electrical engineering, from the Massachusetts Institute of Technology in Cambridge.

31.    Early in his career, Dr. Islam was a member of the Technical Staff in the Advanced Photonics Department at AT&T Bell Laboratories in Holmdel, N.J.

32.    Dr. Islam joined the Electrical and Computer Engineering department at the University of Michigan in Ann Arbor in 1992, where he remains today as a Full Tenured Professor of Optics and Photonics.

33.    Dr. Islam is also a Professor of Biomedical Engineering, a joint department in both the College of Engineering and the Medical School, at the University of Michigan.  He was

previously a faculty member with the University of Michigan Medical School's Department of Internal Medicine.

34.     From 1981 to 1985, Dr. Islam was a Fannie and John Hertz Fellow.  In 1992, Dr. Islam was awarded the OSA Adolf Lomb Medal for pioneering contributions to nonlinear optical phenomena and all-optical switching in optical fibers.  He also received the University of Michigan research excellence award in 1997.  In 1998, Dr. Islam became a Fellow of the Optical Society of America and received the Texas eComm Ten Award for being one of the 10 most influential people in Texas's digital economy in 2002.  Dr. Islam became a fellow of the IEEE in 2004 and was the first recipient of the prestigious 2007 Distinguished University Innovator Award.

35.     Dr. Islam has published over 135 papers in refereed journals, authored three books has written several book chapters, and has been an invited speaker at over 80 conferences and symposia on issues related to his research.  He is also the named inventor on over 200 U.S. patents, including the Asserted Patents.

36.     With an entrepreneurial spirit, Dr. Islam founded Omni MedSci in 2010 to help people by commercializing his optical technology innovations with healthcare and medicine applications.

37.     In 2015, Omni MedSci received the Eureka Award for being the #1 most Innovative Company in Michigan.

38.     By 2012, Dr. Islam had invented technology for using light sources and other components in wearable measurement devices that are capable of detecting and monitoring physiological parameters for use in various applications, including the medical and healthcare fields.

39. On December 31, 2012, Omni MedSci filed a set of patent applications covering its developments using light sources for medical and other applications.

40. The Asserted Patents result from extensive research and development by Dr. Mohammed Islam on behalf of Omni MedSci.

## The Asserted Patents

## U.S. Patent No. 10,126,283

41. On November 13, 2018, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 10,126,283 (the "'283 Patent"), entitled "Near-Infrared Time-of-Flight Imaging." The '283 Patent is attached as Exhibit 1.

42. Plaintiff is the assignee of all rights, title, and interest in and to the '283 Patent and, at a minimum, of all substantial rights in the '283 Patent, and possesses all rights of recovery, whether legal or equitable, under the '283 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

43. Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '283 Patent.

44. Plaintiff and any of its predecessors-in-interest have not licensed the '283 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '283 Patent.

45. Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '283 Patent.

46. The '283 Patent is valid and enforceable.

47.    The '283 Patent is related through a chain of continuation applications to U.S. Patent Nos. 9,995,772; 9,897,584; 9,797,876; and 9,500,634, and claims priority to provisional applications filed on December 31, 2012.  The '283 Patent discloses and expands upon at least the same inventive solutions to technical challenges associated with near-infrared time-of-flight imaging using semiconductor light sources.

48.    The disclosed and claimed inventions of the '283 Patent provide improvements over prior art imaging systems by way of providing, inter alia, a smart phone or tablet that includes laser diodes configured to be pulsed and generate near-infrared light between 700 and 2500 nanometers. Lenses direct the light to a sample, and a detection system includes a photodiode array with pixels coupled to CMOS transistors. The detection system is configured to receive light reflected from the sample, to be synchronized to the light from the laser diodes, and to perform a time-of-flight measurement of a time difference between light from the laser diodes and light reflected from the sample. *See* '283 Patent at Abstract.

49.    The '283 Patent further discloses techniques for increasing signal-to-noise ratio by converting light received while the laser diodes are off into a first signal, and light received while at least one laser diode is on (which includes light reflected from the sample) into a second signal. The smart phone or tablet is configured to difference the first signal and the second signal and to generate a two-dimensional or three-dimensional image using the time-of-flight measurement. *See id.*

50.    The asserted claims of the '283 Patent are directed to a smart phone or tablet that comprises at least the following physical components: an array of laser diodes configured to generate light having one or more optical wavelengths including near-infrared wavelengths between 700 nanometers and 2500 nanometers; one or more lenses configured to receive a portion

9

of the light from the array of laser diodes and to direct the portion of the light to a sample; and a detection system comprising a photodiode array with a plurality of pixels coupled to CMOS transistors. The detection system is configured to receive at least a portion of light reflected from the sample, to be synchronized to the light from the at least a portion of the array of laser diodes, and to perform a time-of-flight measurement by measuring a time difference between the generated light from the laser diodes and the light reflected from the sample. *See id.* at Claims 1, 7, and 16. Thus, the asserted claims of the '283 Patent are each directed to a physical system or device and are not directed to an abstract idea.

51.     The asserted claims of the '283 Patent further recite specific configuration and capabilities for the claimed system, including the capability to generate a two-dimensional or three-dimensional image using at least a portion of the time-of-flight measurement (*see id.*), the capability to use a lock-in technique that detects a modulation frequency (*see id.* at claims 2 and 9), and the capability to increase signal-to-noise ratio by differencing a first signal generated responsive to light received while the laser diodes are off and a second signal generated responsive to light received while at least one laser diode is on (*see id.* at claims 1 and 7). These elements provide for a unique and unconventional application of time-of-flight imaging technology to enable near-infrared imaging capabilities in portable devices such as smartphones and tablets.

52.     Certain of the asserted claims of the '283 Patent include additional elements that provide further beneficial enhancements, such as particular arrangement of the array of laser diodes (*see* claims 5 and 12), using one or more filters to select of fraction of the one or more optical wavelengths (*see* claims 6 and 13), combination of at least a portion of the two-dimensional or three-dimensional image with global positioning system information (*see* claim 15), and the detection system further comprising LIDAR (*see* claim 14).

10

53.     Thus, the asserted claims of the '283 Patent are directed to specific improvements to systems for near-infrared time-of-flight imaging. The claims are directed to a specific field of application, do not preempt others from using the general concept of time-of-flight measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '283 Patent.

### U.S. Patent No. 11,241,156

54.     On February 2, 2022, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 11,241,156 (the "'156 Patent"), entitled "Time-of-Flight Imaging and Physiological Measurements." The '156 Patent is attached as Exhibit 2.

55.     Plaintiff is the assignee of all rights, title, and interest in and to the '156 Patent and, at a minimum, of all substantial rights in the '156 Patent, and possesses all rights of recovery, whether legal or equitable, under the '156 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

56.     Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '156 Patent.

57.     Plaintiff and any of its predecessors-in-interest have not licensed the '156 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '156 Patent.

58.     Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '156 Patent

59.     The '156 Patent is valid and enforceable.

11

60.    The '156 Patent is related through a chain of continuation applications to U.S. Patent Nos. 10,874,304; 10,203,113; 10,098,546; 9,861,286; 9,757,040; 9,500,635; 10,517,484; 10,201,283; 10,136,819; 9,885,698; 9,494,567; 11,109,761; 9,993,159; 10,386,230; 10,126,283; 9,995,722; 9,897,584; 9,797,876; 9,500,634; 10,441,176; 10,172,523; 10,188,299; 9,651,533; 9,164,032; 10,213,113; 10,098,546; 9,861,286; 9,757,040; and 9,500,635, and claims priority to provisional applications filed on December 31, 2012. The '156 Patent discloses and expands upon inventive solutions to technical challenges associated with time-of-flight imaging and remote sensing using near-infrared laser diode technology.

61.    The disclosed and claimed inventions of the '156 Patent provide improvements over prior art remote sensing systems by way of providing, inter alia, a remote sensing system with an array of laser diodes configured to generate light having an initial light intensity and one or more optical wavelengths, wherein at least a portion of the optical wavelengths is a near-infrared wavelength between 700 nanometers and 2500 nanometers. At least a portion of the array of laser diodes comprises one or more Bragg reflectors, and the laser diodes are configured to be modulated with a pulsed output with a pulse duration of approximately 0.5 to 2 nanoseconds and a pulse repetition rate of several Megahertz. The array of laser diodes is further coupled to driver electronics, one or more safety shut-offs, and a thermal management accessory. *See* '156 Patent at Claims 16–17.

62.    The '156 Patent further discloses a beam splitter configured to receive a portion of the light from the array of laser diodes and to direct at least some of the portion of the light to an object, wherein the beam splitter separates the received portion of the light into a plurality of spatially separated lights. A detection system includes a photodiode array comprising a plurality of pixels coupled to CMOS transistors, further comprising one or more lenses and one or more

spectral filters in front of at least a part of the photodiode array. The detection system is configured to receive at least a portion of light reflected from the object, to be synchronized to the array of laser diodes comprising Bragg reflectors, and to perform a time-of-flight measurement based on a time difference between a first time in which the array of laser diodes generate light and a second time in which the photodiode array receives the at least a portion of light reflected from the object. *See id.*

63.     The '156 Patent additionally discloses a camera system coupled to a lens system and the processor, configured to capture one or more images including at least a part of the object, wherein the camera system comprises an illuminator comprising one or more light emitting diodes. The remote sensing system is configured to combine at least a portion of the one or more images and at least a portion of the time-of-flight measurement and is coupled to a smart phone or tablet comprising a wireless receiver, a wireless transmitter, a display, a voice input module, a speaker, a microprocessor, and a touch screen. *See id.*

64.     The asserted claims of the '156 Patent comprise at least the following physical components: an array of laser diodes configured to generate light having an initial light intensity and one or more optical wavelengths, wherein at least a portion of the one or more optical wavelengths is a near-infrared wavelength between 700 nanometers and 2500 nanometers, wherein at least a portion of the array of laser diodes comprises one or more Bragg reflectors, wherein the laser diodes are configured to be modulated with a pulsed output with a pulse duration of approximately 0.5 to 2 nanoseconds and a pulse repetition rate of several Megahertz, and wherein the array of laser diodes is further coupled to driver electronics, one or more safety shut-offs, and a thermal management accessory; a beam splitter configured to receive a portion of the light and to separate the received portion into a plurality of spatially separated lights; a detection system

comprising a photodiode array with a plurality of pixels coupled to CMOS transistors, one or more lenses, and one or more spectral filters; and a camera system coupled to a lens system and the processor. *See id.* Thus, the asserted claims of the '156 Patent are each directed to a physical system and are not directed to an abstract idea.

65.    The asserted claims of the '156 Patent further recite specific configuration and capabilities for the claimed remote sensing system, including the capability to perform a time-of-flight measurement based on a time difference between a first time in which the array of laser diodes generate light and a second time in which the photodiode array receives the at least a portion of light reflected from the object, the capability to combine at least a portion of the one or more images from the camera system and at least a portion of the time-of-flight measurement, and the coupling of the remote sensing system to a smart phone or tablet. Claim 17 further specifies that at least some of the laser diodes in the array operate at a wavelength near 940 nanometers. These elements provide for the unique and unconventional application of time-of-flight imaging technology combined with camera systems to enable enhanced remote sensing capabilities in portable devices.

66.    Thus, the asserted claims of the '156 Patent are directed to specific improvements to remote sensing systems utilizing time-of-flight detection technology. The claims are directed to a specific field of application, do not preempt others from using the general concept of time-of-flight measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '156 Patent.

### U.S. Patent No. 11,596,311

67.    On March 7, 2023, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 11,596,311 (the "'311 Patent"), entitled "Remote Sensing

14

and measurement System Using Time-of-Flight Detectors." The '311 Patent is attached as Exhibit 3.

68.    Plaintiff is the assignee of all rights, title, and interest in and to the '311 Patent and, at a minimum, of all substantial rights in the '311 Patent, and possesses all rights of recovery, whether legal or equitable, under the '311 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

69.    Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '311 Patent.

70.    Plaintiff and any of its predecessors-in-interest have not licensed the '311 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '311 Patent.

71.    Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '311 Patent

72.    The '311 Patent is valid and enforceable.

73.    The '311 Patent is related through a chain of continuation applications to U.S. Patent Nos. 11,241,156; 10,874,304; 10,098,546; 9,861,286; 9,757,040; 9,500,635; 10,517,484; 10,201,283; 10,136,819; 9,885,698; 9,494,567; 9,993,159; 10,386,230; 10,126,283; 9,995,722; 9,897,584; 9,797,876; 9,500,634; 10,441,176; 10,172,523; 10,188,299; 9,651,533; 9,164,032; 10,213,113; 10,098,546; 9,861,286; 9,757,040; and 9,500,635, and claims priority to provisional applications filed on December 31, 2012. The '311 Patent discloses and expands upon inventive solutions to technical challenges associated with remote sensing and non-invasive physiological measurements using time-of-flight detection technology.

15

74.    The disclosed and claimed inventions of the '311 Patent provide improvements over prior art measurement systems by way of providing, *inter alia*, a measurement system with an array of laser diodes having one or more Bragg reflectors. At least a portion of the light generated by the array is configured to penetrate tissue comprising skin. A detection system is configured to measure a phase shift and a time-of-flight of at least a portion of the light from the array of laser diodes reflected from the tissue relative to the portion of the light generated by the array. *See* '311 Patent at Abstract.

75.    The '311 Patent further discloses that the detection system is configured to generate one or more images of the tissue, detect oxy- or deoxy-hemoglobin in the tissue, non-invasively measure blood in blood vessels within or below a dermis layer within the skin, measure one or more physiological parameters based at least in part on the non-invasively measured blood, and measure a variation in the blood or physiological parameter over a period of time. *See id.*

76.    The asserted claims of the '311 Patent are directed to a system that comprises at lease the following physical components: one or more laser diodes to generate light having one or more optical wavelengths that includes at least one near-infrared wavelength between 700 nanometers and 2500 nanometers, wherein at least one or more laser diodes comprises one or more Bragg reflectors; the laser diodes configured to be modulated with a pulsed output with a pulse duration of approximately 0.5 to 2 nanoseconds and pulse repetition rate between one kilohertz and about 100 megahertz; a beam splitter configured to receive at least part of the light from the one or more laser diodes that is split into a received sample arm light and a received reference arm light; and a detection system comprising a photodiode array. *See* '311 Patent at Claim 15. Thus, the asserted claims of the '311 Patent are each directed to a physical system or device and are not directed to an abstract idea.

16

77.    The asserted claims of the '311 Patent further recite the capability of performing a time-of-flight measurement based at least in part on a comparison of the sample detector signal and the reference detector signal, as well as performing a time-of-flight measurement at least in part by measuring a temporal distribution of photons in the received portion of reflected sample arm light.  These elements provide for a unique and unconventional application of time-of-flight imaging technology to enable near-infrared imaging capabilities.

78.    Certain of the asserted claims of the '311 Patent include additional elements that provide further beneficial enhancements, such as improving the signal-to-noise ratio of at least a portion of the time-of-flight measurement by increasing light intensity of one or more laser diodes relative to the initial light intensity (*see* claim 18), and combining the remote sensing system with a camera system couple to a lens system and a processor configured to capture one or more images including at least part of the object (*see* claim 19).

79.    Thus, the asserted claims of the '311 Patent are directed to specific improvements to systems for near-infrared time-of-flight imaging. The claims are directed to a specific field of application, do not preempt others from using the general concept of time-of-flight measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '311 Patent.

### U.S. Patent No. 11,678,805

80.    On June 20, 2023, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 11,678,805 (the "'805 Patent"), entitled "Active Remote Sensing System Using Time-of-Flight Sensor Combined With Cameras and Wearable Devices." The '805 Patent is attached as Exhibit 4.

81.     Plaintiff is the assignee of all rights, title, and interest in and to the '805 Patent and, at a minimum, of all substantial rights in the '805 Patent, and possesses all rights of recovery, whether legal or equitable, under the '805 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

82.     Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '805 Patent.

83.     Plaintiff and any of its predecessors-in-interest have not licensed the '805 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '805 Patent.

84.     Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '805 Patent.

85.     The '805 Patent is valid and enforceable.

86.     The '805 Patent is related through a chain of continuation applications to U.S. Patent Nos. 11,353,440; 10,928,374; 10,677,774; 10,386,230; 10,126,283; 9,995,722; 9,897,584; 9,797,876; 9,500,634; 10,517,484; 10,201,283; 10,136,819; 9,885,698; 9,494,567; 11,109,761; 10,386,230; 10,126,283; 9,995,722; 9,897,584; 9,797,876; 9,500,634; 10,441,176; 10,172,523; 10,188,299; 9,651,533; 9,164,032; 10,213,113; 10,098,546; 9,861,286; 9,757,040; and 9,500,635, and claims priority to provisional applications filed on December 31, 2012.  The '805 Patent discloses and expands upon at least the same inventive solutions to technical challenges associated with ToF imaging.

87.     The disclosed and claimed inventions of the '805 Patent provide improvements over prior art remote sensing systems by way of providing, inter alia, an active remote sensing

18

system with an array of laser diodes that generate light directed to an object having one or more optical wavelengths that include at least one near-infrared wavelength between 700 nanometers and 2500 nanometers. One of the laser diodes pulses with pulse duration of approximately 0.5 to 2 nanoseconds at a repetition rate between one kilohertz and about 100 megahertz. A beam splitter receives the laser light, separates the light into a plurality of spatially separated lights, and directs the lights to the object. *See* '805 Patent at Abstract.

88.    The '805 Patent further discloses a detection system that includes a photodiode array synchronized to the array of laser diodes and performs a time-of-flight measurement by measuring a temporal distribution of photons received from the object. The time-of-flight measurement is combined with images from a camera system, and the remote sensing system is configured to be coupled to a wearable device, a smart phone, or a tablet. *See id.*

89.    The asserted claims of the '805 Patent comprise at least the following physical components: one or more laser diodes configured to generate light having an initial light intensity and one or more optical wavelengths, wherein at least a portion of the one or more optical wavelengths is a near-infrared wavelength between 700 nanometers and 2500 nanometers, and wherein the one or more laser diodes comprises one or more Bragg reflectors; a first lens configured to receive at least a portion of the light from the one or more laser diodes and to direct at least some of the portion of the light to an object; a detection system comprising a photodiode array with a plurality of pixels coupled to CMOS transistors. *See* '805 Patent at Claims 1, 8, 14. Thus, the asserted claims of the '805 Patent are each directed to a physical system and are not directed to an abstract idea.

90.    The asserted claims of the '805 Patent further recite specific configuration and capabilities for the claimed remote sensing system, including the capability to perform a time-of-

19

flight measurement based on a time difference between a first time in which the laser diodes generate light and a second time in which the photodiode array receives the light reflected from the object, the capability to perform the time-of-flight measurement by measuring a temporal distribution of photons in the received portion of light reflected from the object, a beam splitter configured to receive from the first lens at least some of the portion of light from the one or more laser diodes that is split into a received sample arm light and a received reference arm light where a portion of the received sample arm light is directed to the object, and the capability to combine the time-of-flight measurement with images from a camera system. *See id.* at Claims 1, 2, 4. These elements provide for the unique and unconventional application of time-of-flight sensing technology combined with camera imaging to enable enhanced remote sensing capabilities in wearable devices, smartphones, and tablets.

91.    Thus, the asserted claims of the '805 Patent are directed to specific improvements to active remote sensing systems. The claims are directed to a specific field of application, do not preempt others from using the general concept of time-of-flight measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '805 Patent.

### U.S. Patent No. 11,992,291

92.    On May 28, 2024, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 11,992,291 (the "'291 Patent"), entitled "Identifying Objects Using Near-Infrared Sensors, Cameras or Time-of-Flight Detectors."  The '291 Patent is attached as Exhibit 5.

93.    Plaintiff is the assignee of all rights, title, and interest in and to the '291 Patent and, at a minimum, of all substantial rights in the '291 Patent, and possesses all rights of recovery,

20

whether legal or equitable, under the '291 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

94.    Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '291 Patent.

95.    Plaintiff and any of its predecessors-in-interest have not licensed the '291 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '291 Patent.

96.    Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '291 Patent.

97.    The '291 Patent is valid and enforceable.

98.    The '291 Patent is related through a chain of continuation applications to U.S. Patent Nos. 11,678,805; 11,353,440; 10,928,374; 10,677,774; 10,517,484; 10,441,176; 10,386,230; 10,201,283; 10,213,113; 10,172,523; 11,109,761; 10,126,283; 10,136,819; 10,098,546; 9,995,722; 9,897,584; 9,861,286; 10,188,299; 9,797,876; 9,757,040; 9,885,698; 9,651,533; 9,500,635; 9,500,634; 9,494,567; 9,993,159; and 9,164,032, and claims priority to provisional applications filed on December 31, 2012. The '291 Patent discloses and expands upon at least the same inventive solutions to technical challenges associated with ToF imaging.

99.    The disclosed and claimed inventions of the '291 Patent provide improvements over prior art sensing systems by way of providing, *inter alia*, a sensing system that includes laser diodes with Bragg reflectors generating light having an initial light intensity and one or more near-infrared optical wavelengths. The laser diodes are modulated with a pulsed output with 0.5 to 2 nanosecond pulse duration. A beam splitter receives light from the laser diodes, splits the light into

21

a received sample arm light directed to an object and a received reference arm light. *See* '291 Patent at Abstract.

100.    The '291 Patent further discloses a detection system that includes a second lens and spectral filters in front of a photodiode array. The photodiode array is coupled to CMOS transistors and receives at least a portion of the received reference arm light and generates a reference detector signal. The detection system is synchronized with the laser diodes, and a time-of-flight measurement is based on a comparison of the sample detector signal and the reference detector signal and measures a temporal distribution of photons in the received reflected sample arm light. *See id.*

101.    The asserted claims of the '291 Patent comprise at least the following physical components: a plurality of laser diodes configured to generate light having an initial light intensity and one or more optical wavelengths, wherein at least a portion of the one or more optical wavelengths is a near-infrared wavelength between 700 nanometers and 2500 nanometers, wherein the plurality of laser diodes comprises one or more Bragg reflectors, and wherein the laser diodes are configured to be modulated with a pulsed output with a pulse duration of approximately 0.5 to 2 nanoseconds; a beam splitter configured to receive at least part of the light from the plurality of laser diodes that is split into a received sample arm light and a received reference arm light, at least a portion of the received sample arm light being directed to an object; and a detection system comprising a photodiode array with a plurality of pixels coupled to CMOS transistors. *See* '291 Patent at Claim 1. Thus, the asserted claims of the '291 Patent are each directed to a physical system and are not directed to an abstract idea.

102.    The asserted claims of the '291 Patent further recite specific configuration and capabilities for the claimed remote sensing system, including the capability to perform a time-of-

flight measurement based on a time difference between a first time in which the laser diodes generate light and a second time in which the photodiode array receives the light reflected from the object, the capability to perform the time-of-flight measurement at least in part by measuring a temporal distribution of photons in the received portion of light, and the capability to identify an object and compare a property of the time-of-flight measurement to a threshold. *See id.* These elements provide for the unique and unconventional application of time-of-flight sensing technology to enable object identification using near-infrared wavelengths.

103. Thus, the asserted claims of the '291 Patent are directed to specific improvements to systems for identifying objects using near-infrared sensors and time-of-flight detection. The claims are directed to a specific field of application, do not preempt others from using the general concept of time-of-flight measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '291 Patent.

## U.S. Patent No. 12,426,788

104. On September 30, 2025, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 12,426,788 (the "'788 Patent"), entitled "Active Remote Sensing of Atmospheric Gases or Smoke Using a Time-of-Flight Sensor." The '788 Patent is attached as Exhibit 6.

105. Plaintiff is the assignee of all rights, title, and interest in and to the '788 Patent and, at a minimum, of all substantial rights in the '788 Patent, and possesses all rights of recovery, whether legal or equitable, under the '788 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

106. Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '788 Patent.

107. Plaintiff and any of its predecessors-in-interest have not licensed the '788 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '788 Patent.

108. Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '788 Patent.

109. The '788 Patent is valid and enforceable.

110. The '788 Patent is related through a chain of continuation applications to U.S. Patent Nos. 12,251,194; 11,992,291; 11,678,805; 11,353,440; 10,928,374; 10,677,774; 10,386,230; 10,201,283; 9,995,722; 9,897,584; 9,797,876; 9,500,534;  10,517,484; 10,201,283; 10,136,819; 9,885,698; 9,494,567; 11,109,761; 9,993,159; 10,386,230; 10,441,176; 10,172,523; 10,188,299; 9,651,533; 9,164,032; 10,213,113; 10,098,546; 9,861,286; 9,757,040; and 9,500,635, and claims priority to provisional applications filed on December 31, 2012.  The '788 Patent discloses and expands upon at least the same inventive solutions to technical challenges associated with ToF imaging.

111. The disclosed and claimed inventions of the '788 Patent provide improvements over prior art remote sensing systems by way of providing, inter alia, a remote sensing system comprising a plurality of laser diodes configured to generate light having an initial light intensity and an initial optical power density and an optical wavelength between 700 nanometers and 2500 nanometers. The plurality of laser diodes comprises one or more Bragg reflectors and is configured to be modulated with a pulsed output having a pulse duration of approximately 0.5 to 2 nanoseconds. The plurality of laser diodes is further coupled to driver electronics, a first lens, and one or more safety shut-offs. A beam splitter is configured to receive at least part of the light from

the plurality of laser diodes directed to an object and to split the light into a sample arm light and a reference arm light. *See* '788 Patent at Claim 1.

112.   The '788 Patent further discloses a first photodiode array comprising a first plurality of pixels coupled to CMOS transistors configured to receive at a first time at least a portion of the reference arm light and configured to generate a reference detector signal. A second photodiode array comprising a second plurality of pixels coupled to CMOS transistors, with a second lens and spectral filter in front of at least part of the second photodiode array, is configured to receive at a second time at least a portion of the sample arm light reflected from the object and configured to generate a sample detector signal. Both photodiode arrays are coupled to a processor and configured to be synchronized to the plurality of laser diodes. The processor is configured to perform a time-of-flight measurement based at least in part on a comparison of the sample detector signal and the reference detector signal, and to perform the time-of-flight measurement at least in part by measuring a temporal distribution of photons in the sample arm light received by the second photodiode array. *See id.*

113.   The '788 Patent additionally discloses that the processor is configured to improve the signal-to-noise ratio of the sample detector signal by increasing light intensity of the plurality of laser diodes relative to the initial light intensity or increasing optical power density of the plurality of laser diodes relative to the initial optical power density. The second photodiode array is further configured to generate a first signal responsive to light received while the plurality of laser diodes is off, and to generate a second signal responsive to light received while at least a part of the plurality of laser diodes is on, and the processor is configured to improve the signal-to-noise ratio by comparing the first signal and the second signal. *See id.*

25

114.    The asserted claims of the '788 Patent comprise at least the following physical components: a plurality of laser diodes configured to generate light having an initial light intensity and an initial optical power density and an optical wavelength between 700 nanometers and 2500 nanometers, wherein the plurality of laser diodes comprises one or more Bragg reflectors, wherein the plurality of laser diodes is configured to be modulated with a pulsed output having a pulse duration of approximately 0.5 to 2 nanoseconds, and wherein the plurality of laser diodes is further coupled to driver electronics, a first lens, and one or more safety shut-offs; a beam splitter configured to split the light into a sample arm light and a reference arm light; a first photodiode array with CMOS transistors for receiving reference arm light; and a second photodiode array with CMOS transistors and a second lens and spectral filter for receiving reflected sample arm light. *See id.* at Claims 1, 5. Thus, the asserted claims of the '788 Patent are each directed to a physical system and are not directed to an abstract idea.

115.    The asserted claims of the '788 Patent further recite specific configuration and capabilities for the claimed remote sensing system, including the capability to perform a time-of-flight measurement based at least in part on a comparison of the sample detector signal and the reference detector signal, the capability to perform the time-of-flight measurement at least in part by measuring a temporal distribution of photons in the sample arm light, and the capability to improve the signal-to-noise ratio by both increasing light intensity and by comparing signals received while the laser diodes are off and on. Claim 5 further specifies that the remote sensing system including the processor is configured to be coupled to a camera system configured to capture one or more images including at least a part of the object, that the remote sensing system is configured to use the time-of-flight measurement to measure a distance of the object from the

26

camera system, and that the remote sensing system is configured to be coupled to a wearable device, a smart phone, or a tablet.

116.    Thus, the asserted claims of the '788 Patent are directed to specific improvements to active remote sensing systems utilizing time-of-flight detection technology. The claims are directed to a specific field of application, do not preempt others from using the general concept of time-of-flight measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '788 Patent.

### U.S. Patent No. 12,588,820

117.    On March 31, 2026, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 12,588,820 (the "'820 Patent"), entitled "Wearable Device for Differential Measurement on Pulse Rate and Blood Flow."  The '820 Patent is attached as Exhibit 7.

118.    Plaintiff is the assignee of all rights, title, and interest in and to the '820 Patent and, at a minimum, of all substantial rights in the '820 Patent, and possesses all rights of recovery, whether legal or equitable, under the '820 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

119.    Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '820 Patent.

120.    Plaintiff and any of its predecessors-in-interest have not licensed the '820 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '820 Patent.

121.    Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '820 Patent.

122.    The '820 Patent is valid and enforceable.

123.    The '820 Patent is related through a chain of continuation applications to U.S. Patent Nos. 12,193,790; 11,896,346; 11,564,577; 11,160,455; 10,820,807; 10,517,484; 10,201,283; 10,136,819; 9,885,698; 9,494,567; 11,109,761; 9,993,159; 10,386,230; 10,126,283; 9,995,722; 9,897,584; 9,797,876; 9,500,634; 10,441,176; 10,172,523; 10,188,299; 9,651,533; 9,164,032; 10,213,113; 10,098,546; 9,861,286; 9,757,040; and 9,500,635, and claims priority to a provisional application filed on December 31, 2012.  The '820 Patent discloses and expands upon at least the same inventive solutions to technical challenges associated with ToF imaging.

124.    The disclosed and claimed inventions of the '820 Patent provide improvements over prior art wearable devices by way of providing, inter alia, a measurement system adapted to be worn by a user that includes an array of laser diodes configured to generate light having an initial light intensity and one or more optical wavelengths, wherein at least a portion of the optical wavelengths is a near-infrared wavelength between 700 nanometers and 2500 nanometers. At least a portion of the array of laser diodes comprises one or more Bragg reflectors, and the laser diodes are configured to be modulated with a pulsed output with a pulse duration of approximately 0.5 to 2 nanoseconds and a pulse repetition rate between about 10 Megahertz and 1 Gigahertz. *See* '820 Patent at Claim 9.

125.    The '820 Patent further discloses a photodiode array with a plurality of pixels coupled to CMOS transistors, wherein the photodiode array is configured to receive at least a portion of light reflected from an object and is synchronized to the array of laser diodes comprising

one or more Bragg reflectors. The processor is configured to perform a time-of-flight measurement based on a time difference between a first time in which the array of laser diodes generate light and a second time in which the photodiode array receives a received portion of light reflected from the object. The processor is further configured to perform the time-of-flight measurement at least in part by measuring a temporal distribution of photons in the received portion of light. *See id.*

126.    The '820 Patent additionally discloses integration with camera systems, including a first camera configured to capture one or more images including at least a part of the object, wherein the processor is configured to combine at least a portion of the one or more images and at least a portion of the time-of-flight measurement to create a combined portion. A second camera is configured to be illuminated by one or more light emitting diodes generating incoherent light and is configured to operate in a near-infrared wavelength range to at least in part monitor at least one eye of the user. *See* '820 Patent at Claims 9–10.

127.    The asserted claims of the '820 Patent comprise at least the following physical components: a measurement system adapted to be worn by a user; an array of laser diodes configured to generate light having an initial light intensity and one or more optical wavelengths, wherein at least a portion of the one or more optical wavelengths is a near-infrared wavelength between 700 nanometers and 2500 nanometers, wherein at least a portion of the array of laser diodes comprises one or more Bragg reflectors, wherein the laser diodes are configured to be modulated with a pulsed output with a pulse duration of approximately 0.5 to 2 nanoseconds and a pulse repetition rate between about 10 Megahertz and 1 Gigahertz; a first lens configured to receive at least a portion of the light from the array of laser diodes and direct it to an object; a photodiode array with a plurality of pixels coupled to CMOS transistors; a processor; a first camera configured to capture one or more images; and a second camera configured to be illuminated by

29

light emitting diodes and to monitor at least one eye of the user. *See id.* Thus, the asserted claims of the '820 Patent are each directed to a physical system or device and are not directed to an abstract idea.

128.    The asserted claims of the '820 Patent further recite specific configuration and capabilities for the claimed wearable measurement system, including the capability to perform a time-of-flight measurement based on a time difference between a first time in which the array of laser diodes generate light and a second time in which the photodiode array receives the at least a portion of light reflected from the object, the capability to perform the time-of-flight measurement at least in part by measuring a temporal distribution of photons in the received portion of light, and the capability to combine at least a portion of one or more captured images and at least a portion of the time-of-flight measurement to create a combined portion. These elements provide for the unique and unconventional application of time-of-flight sensing technology combined with camera imaging to enable enhanced measurement capabilities in wearable devices.

129.    Claim 10 of the '820 Patent includes an additional element that provides further beneficial enhancements, namely that the processor is further configured to use artificial intelligence in making decisions associated with the one or more images or the combined portion. *See* '820 Patent at Claim 10.

130.    Thus, the asserted claims of the '820 Patent are directed to specific improvements to wearable measurement systems utilizing time-of-flight detection technology. The claims are directed to a specific field of application, do not preempt others from using the general concept of time-of-flight measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '820 Patent.

30

**U.S. Patent No. 12,599,305**

131.    On April 14, 2026, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 12,599,305 ("the '305 Patent"), entitled "3D Cameras or Sensors Inputting to Multi-Modal Generative Artificial Intelligence Models Trained on Images or Videos." The '305 Patent is attached hereto as Exhibit 8.

132.    Plaintiff is the assignee of all rights, title, and interest in and to the '305 Patent and, at a minimum, of all substantial rights in the '305 Patent, and possesses all rights of recovery, whether legal or equitable, under the '305 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

133.    Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '305 Patent.

134.    Plaintiff and any of its predecessors-in-interest have not licensed the '305 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '305 Patent.

135.    Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '305 Patent.

136.    The '305 Patent is valid and enforceable.

137.    The '305 Patent is a continuation of U.S. Patent No. 12,502,080, and is related through a chain of continuation and continuation-in-part applications to U.S. Patent Nos. 12,226,188; 11,596,311; 11,241,156; 10,874,304; 10,213,113; 10,098,546; 9,861,286; 9,757,040; 9,500,635; 10,517,484; 10,201,283; 10,136,819; 9,885,698; 9,494,567; 11,109,761; 9,993,159; 10,386,230; 10,126,283; 9,995,722; 9,897,584; 9,500,634; 10,441,176; 10,172,523; 10,188,299;

9,651,533; and 9,164,032, and claims priority to a provisional application filed on December 31, 2012. The '305 Patent discloses and expands upon inventive solutions to technical challenges associated with 3D camera and time-of-flight sensing systems integrated with multi-modal generative artificial intelligence models for analyzing images and videos.

138.    The disclosed and claimed inventions of the '305 Patent provide improvements over prior art remote sensing systems by way of providing, inter alia, a remote sensing system comprising an array of laser diodes configured to generate light having an initial light intensity and one or more optical wavelengths, wherein the array of laser diodes comprises a plurality of emitters, and wherein at least a portion of the one or more optical wavelengths is a near-infrared wavelength between 700 nanometers and 2500 nanometers. At least a portion of the array of laser diodes comprises one or more Bragg reflectors. The laser diodes are configured to be modulated with a pulsed output with a pulse duration of approximately 0.5 to 2 nanoseconds and a pulse repetition rate between about 10 Megahertz and 1 Gigahertz. The array of laser diodes is further coupled to driver electronics. *See* '305 Patent at Claim 1.

139.    The '305 Patent further discloses a photodiode array with at least one second lens and one or more spectral filters in front of at least a part of the photodiode array, wherein the photodiode array is further coupled to a processor and comprises a plurality of pixels coupled to CMOS transistors. The photodiode array is configured to receive at least a portion of light reflected from an object, and is further configured to be synchronized to the at least a portion of the array of laser diodes comprising one or more Bragg reflectors. The processor is configured to perform a time-of-flight measurement based on a time difference between a first time in which the at least a portion of the array of laser diodes generate light and a second time in which the photodiode array receives a received portion of light reflected from the object. The processor is further configured

32

to perform the time-of-flight measurement at least in part by measuring a temporal distribution of photons in the received portion of light. *See id.*

140. The '305 Patent additionally discloses that the processor is configured to be coupled to a non-transitory computer readable medium, and that at least a portion of the time-of-flight measurement is configured to serve as at least one input to a multi-modal generative artificial intelligence model configured to communicate with or operate at least in part on the processor. The multi-modal generative artificial intelligence model comprises a vision transformer configured to analyze an item in an input video or an input image, and the vision transformer comprises self-attention and positional encoding layers. *See id.* at Claims 1–7.

141. The asserted claims of the '305 Patent comprise at least the following physical components: an array of laser diodes configured to generate light having an initial light intensity and one or more optical wavelengths, wherein the array of laser diodes comprises a plurality of emitters, wherein at least a portion of the one or more optical wavelengths is a near-infrared wavelength between 700 nanometers and 2500 nanometers, wherein at least a portion of the array of laser diodes comprises one or more Bragg reflectors, wherein the at least a portion of the array of laser diodes is further configured to be modulated with a pulsed output with a pulse duration of approximately 0.5 to 2 nanoseconds and a pulse repetition rate between about 10 Megahertz and 1 Gigahertz, and wherein the array of laser diodes is further coupled to driver electronics; a first lens configured to receive at least a portion of the light from the array of laser diodes and configured to direct at least some of the portion of the light to an object; a photodiode array with at least one second lens and one or more spectral filters, wherein the photodiode array is coupled to a processor and comprises a plurality of pixels coupled to CMOS transistors; and a non-

transitory computer readable medium coupled to the processor. *See id.* Thus, the asserted claims of the '305 Patent are each directed to a physical system and are not directed to an abstract idea.

142. The asserted claims of the '305 Patent further recite specific configuration and capabilities for the claimed remote sensing system, including the capability to perform a time-of-flight measurement based on a time difference between a first time in which the array of laser diodes generate light and a second time in which the photodiode array receives the at least a portion of light reflected from the object, the capability to perform the time-of-flight measurement at least in part by measuring a temporal distribution of photons in the received portion of light, and the integration of at least a portion of the time-of-flight measurement as an input to a multi-modal generative artificial intelligence model comprising a vision transformer with self-attention and positional encoding layers. *See id.* These elements provide for the unique and unconventional application of time-of-flight sensing technology integrated with generative artificial intelligence to enable enhanced remote sensing and analysis capabilities.

143. Dependent claims 2 through 7 of the '305 Patent recite additional elements that provide further beneficial enhancements, including: coupling the remote sensing system to a camera to capture images and combining the images with the time-of-flight measurement as input to the generative artificial intelligence model (claim 2); training or fine-tuning the generative artificial intelligence model using reinforcement learning, reinforcement fine-tuning, prompt tuning, or supervised fine-tuning (claim 3); performing data fusion by combining the time-of-flight measurement with data from sensors (claim 4); performing anomalous occurrence detection by training on images or videos corresponding to normal occurrences and detecting differences that fall outside a threshold value (claim 5); incorporating natural language processing to accept and analyze voice prompts or voice-based interactions (claim 6); and coupling to an agent, a robot, or

34

industrial automated equipment or vehicle, wherein an output from the generative artificial intelligence model serves as a guidance input (claim 7). *See id.* at Claims 2–7.

144.    Thus, the asserted claims of the '305 Patent are directed to specific improvements to remote sensing systems utilizing time-of-flight detection technology integrated with multi-modal generative artificial intelligence. The claims are directed to a specific field of application, do not preempt others from using the general concept of time-of-flight measurements or artificial intelligence, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '305 Patent.

### Knowledge of the Asserted Patent

145.    Defendants have had actual notice of the '283, '311, '805, '291, '788, '820, and '305 Patents and the infringement alleged herein at least upon service of this Complaint.

146.    Samsung has known of the Asserted Patents and Samsung's infringement thereof prior to the filing of this Complaint by virtue of direct interactions between Omni MedSci's principal, Dr. Islam, and persons and entities affiliated with Samsung. The knowledge possessed by each Samsung employee and entity referenced herein of the Omni MedSci, Dr. Islam, the Asserted Patents, and Samsung's infringement thereof may be imputed to Defendants SEC, SEA, and SSI.

147.    On April 10, 2017, Dr. Won Pyo Hong, President and Chief Executive Officer of Samsung SDS Co., Ltd., was presented with the inaugural ECE Alumni Impact Award from the Electrical and Computer Engineering department at the University of Michigan.[1]

---

[1] *See Won Pyo Hong, President of Samsung SDS, Presented with Inaugural ECE Alumni Impact Award*, at https://ece.engin.umich.edu/stories/won-pyo-hong-president-of-samsung-sds-presented-with-inaugural-ece-alumni-impact-award (last visited on Dec. 20, 2024).

148.    On April 10, 2017, Dr. Islam met one-on-one with Dr. Hong concerning Omni MedSci's proprietary and patented technology. Dr. Islam explained his work and developments, and specifically identified several Omni MedSci patents.

149.    Dr. Hong gave a lecture on "Samsung Innovation" later that day, during which Dr. Hong referenced his meeting with Dr. Islam as providing insights.

150.    The meeting with Dr. Hong eventually led to an introduction to a SEC Senior Manager, Sung Gyu Choi.

151.    On July 17, 2017, Dr. Islam, on behalf of Omni MedSci, participated in a virtual meeting with Mr. Choi. During the meeting, Dr. Islam presented on Omni MedSci's patented and proprietary technology.

152.    On August 26, 2021, Dr. Islam, on behalf of Omni MedSci, participated in a meeting with Leo Lautenschlager, a senior manager with the automotive division of SSI. Dr. Islam presented information in relation to applications for the Omni MedSci technology such as contactless vital signs measurements for driver monitoring systems.

153.    On October 22, 2021, Dr. Islam met with Mr. Lautenschlager, Badri Padmanabhan, Sanjith Thayyilthodiyil, Kevin J. Lee, and others. During this October 22, 2021 meeting, Dr. Islam presented on a wide array of Omni MedSci's patented and proprietary technology, including near-infrared time of flight camera systems. As part of that presentation, Dr. Islam identified for Samsung a number of patents Omni MedSci held related to LiDAR and ToF imaging, including the '283 Patent, and U.S. Patent Publication No. 2021/0137389, which resulted in the '156 Patent.

154.    Dr. Islam continued communicating with employees of SSI until early 2023.

155. At Mr. Lautenschlager's request, Dr. Islam provided additional materials concerning Omni MedSci's patented and proprietary technology, which, on information and belief, were then presented to SEC.

156. Mr. Lautenschlager also introduced Dr. Islam to employees with other SEC subsidiaries.

157. On October 22, 2021, Dr. Islam met face-to-face with Mr. Lautenschlager, Badri Padmanabhan, Sanjith Thayyilthodiyil, Kevin J. Lee, and others.

158. At the October 22 meeting, Dr. Islam presented on Omni MedSci's patented and proprietary technology, including near-infrared time of flight camera systems. As part of that presentation, Dr. Islam identified for Samsung a number of patents Omni MedSci held related to LiDAR and ToF imaging, including the '283 Patent, and U.S. Patent Publication No. 2021/0137389, which resulted in the '156 Patent.

159. On March 2, 2023, Dr. Islam again met face-to-face with Mr. Padmanabhan on Omni MedSci's proprietary and patented technology, including near-infrared time of flight camera systems. As part of that presentation, Dr. Islam again identified for Samsung a number of patents Omni MedSci held related to LiDAR and ToF imaging, including the '283, '156, and '311 Patents, and U.S. Patent Publication No. 2022/0308034, which resulted in the '805 Patent.

160. On information and belief, the Defendants each have lawyers and other active agents who regularly review patents and published patent applications relevant to the technology in the field of the Asserted Patents. Defendants' knowledge of the Asserted Patents and their infringement thereof is believed to come through at least the aforementioned encounters with Dr. Islam and Omni MedSci, as well as the review by Defendants agents. The timing, circumstances,

and extent of each Defendant obtaining actual knowledge of the Asserted Patents and Defendants' infringement thereof prior to commencement of this lawsuit will be confirmed during discovery.

## THE ACCUSED SYSTEMS

161. Defendant Samsung makes, uses, sells, offers for sale, and/or imports into the United States a variety of smartphones, such as Samsung Galaxy S series phones, and Galaxy Note series phones. These smartphones include, among others, the Galaxy Note 20 Ultra, the Galaxy S21 Ultra, the Galaxy S22 Ultra, the Galaxy S23 Ultra, the Galaxy S24 Ultra, the Galaxy S25 Ultra, and the Galaxy S26 Ultra, (each a "Samsung Smartphone"). The Samsung Smartphones include camera systems that perform Samsung's laser autofocus ("laser AF") to measure the distance of a subject in order to focus the lenses of the smartphones' camera systems. Samsung actively markets and supports sales of Samsung Smartphones through its websites and other means, and sells these smartphones to retailers, distributors, and/or other resellers.

162. When the user operates the camera system of a Samsung Smartphone, the device performs laser AF by emitting laser light toward a subject and measuring the time-of-flight of the reflected light to determine the distance between the smartphone and the subject. The Samsung Smartphone uses this distance measurement to adjust the focal position of the camera lens, thereby achieving rapid and accurate autofocus. Thus, Samsung provides and supports smartphones incorporating hardware and software components designed and intended to emit light pulses and measure the time-of-flight of reflected signals to determine distance for the purpose of focusing a camera lens.

163. Samsung also makes, uses, sell, offers for sale, and/or imports into the United States extended reality headsets, such as the Samsung Galaxy XR (the "Samsung XR Headset"). The Samsung XR Headset performs direct time-of-flight ("dToF") sensing to measure distance.

38

Samsung actively markets and supports sales of the Samsung XR Headset through its websites and other means, and sells these headsets to retailers, distributors, and/or other resellers.

164. When the user wears and operates a Samsung XR Headset, the device performs dToF by emitting light pulses and directly measuring the time it takes for reflected light to return to the sensor, thereby calculating the distance to objects in the user's environment. The Samsung XR Headset uses these distance measurements to enable spatial awareness, depth mapping, and interaction with the user's surroundings. Thus, Samsung provides and supports extended reality headsets incorporating hardware and software components designed and intended to emit light pulses and directly measure the time-of-flight of reflected signals to determine distance.

**Count I: Infringement of the '283 Patent**
**(Against All Defendants)**

165. Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 164 above.

166. Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '283 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing smartphone devices that embody the inventions claimed in the '283 Patent, in particular, at least claims 7 and 13–15, within the United States and within this District.  Samsung has been and is engaged in one or more of these direct infringing activities related to its Samsung Smartphones incorporating laser AF.  Samsung sells the Samsung Smartphones to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales.  On information and belief, Plaintiff further alleges that Samsung employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 7 and 13–15 of the '283

Patent in connection with development, testing, and/or demonstration of Samsung Smartphones incorporating laser AF.

167.   Notice of the factual bases of Plaintiff's allegations of infringement of the '283 Patent by the Samsung Smartphones is provided in the claim chart attached hereto as Exhibit 9. The claim chart demonstrates how the '283 Patent is infringed by reference to particular Samsung Smartphones, which, on information and belief, are representative of the infringing aspects of at least the Samsung Smartphones identified in Paragraphs 161–162 above. The referenced infringement chart is based on Plaintiff's current understanding of the Samsung Smartphones based on information publicly available at the time of filing this Complaint. The selection of claims and products is exemplary and should not be considered limiting of Samsung's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

168.   Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '283 Patent, including at least claims 7 and 13–15, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

169.   Samsung's customers and other end-users directly infringe at least claims 7 and 13–15 at least by using infringing devices comprised of Samsung Smartphones incorporating laser AF. End-users have used and continue to use the subject matter of claims 7 and 13–15 by placing the Samsung Smartphones into service, operating the camera systems, and obtaining beneficial use of each element of the claimed inventions. End-users initiate use of the claimed inventions by

operating the camera system of a Samsung Smartphone, which performs laser AF to measure the distance of a subject and focus the lenses of the camera system.  Samsung's customers and other end-users also directly infringe at least claims 7 and 13–15 at least by using Samsung Smartphones, and distributors and resellers directly infringe those claims by offering for sale and selling such Samsung Smartphones.

170.    Samsung has actual notice of the '283 Patent and the infringement alleged herein at least upon the service of this Complaint.  The timing, circumstances, and extent of Samsung obtaining actual knowledge of the '283 Patent prior to commencement of this lawsuit will be confirmed during discovery.

171.    Samsung actively induces third parties, including customers and end-users, to use infringing Samsung Smartphones operating in their normal and customary way and in accordance with their intended functionality and purpose.  Samsung induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Samsung Smartphones, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Samsung Smartphones in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Samsung induces direct infringement by such third parties by (i) selling the Samsung Smartphones to third parties when such products are designed for use in a manner that infringes the '283 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '283 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the laser AF features of Samsung Smartphones are operated such that each element of the patented inventions are present in a manner dictated by Samsung; (iv) providing

41

technical support, information, and instructions for operating the Samsung Smartphones in their customary way; (v) advertising and promoting the Samsung Smartphones; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Samsung Smartphones including the laser AF features thereof.

172.    Upon gaining knowledge of the '283 Patent, it became apparent to Samsung that the manufacture, sale, importing, offer for sale, or use of the Samsung Smartphones infringe the '283 Patent.  Despite knowledge of the '283 Patent, Samsung continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner which infringes the '283 Patent.  Samsung performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '283 Patent.  Samsung directly benefits from and actively and knowingly encourages customers and end-users to use infringing devices in the Samsung Smartphones.   On information and belief, Samsung will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '283 Patent.

173.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing smartphones pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Samsung Smartphones incorporating laser AF hardware and software, knowing that such devices and software are material to the inventions claimed by at least claims 7 and 13–15 of the '283 Patent, are especially made or especially adapted for use in infringing the patented devices and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

174.    Samsung's direct and indirect infringement of the '283 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.  Unless Samsung ceases its infringing activities, it will continue to injure Plaintiff.

175.    On information and belief, Samsung acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Samsung should have known about it.  Samsung continues to infringe the '283 Patent by making, using, selling, offering for sale and/or importing in the United States the Samsung Products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights.  Samsung continues its infringement notwithstanding actual knowledge of the '283 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '283 Patent.  Samsung's infringement of the '283 Patent, following its knowledge of the '283 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

**Count II: Infringement of the '156 Patent**
**(Against All Defendants)**

176.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 175 above.

177.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '156 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using,

selling, offering to sell, and/or importing smartphone devices that embody the inventions claimed in the '156 Patent, in particular, at least claims 16 and 17, within the United States and within this District.  Samsung has been and is engaged in one or more of these direct infringing activities related to its Samsung Smartphones incorporating laser AF.  Samsung sells the Samsung Smartphones to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales.  On information and belief, Plaintiff further alleges that Samsung employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 16 and 17 of the '156 Patent in connection with development, testing, and/or demonstration of Samsung Smartphones incorporating laser AF.

178.    Notice of the factual bases of Plaintiff's allegations of infringement of the '156 Patent by the Samsung Smartphones is provided in the claim chart attached hereto as Exhibit 10. The claim chart demonstrates how the '156 Patent is infringed by reference to particular Samsung Smartphones, which, on information and belief, are representative of the infringing aspects of at least the Samsung Smartphones identified in Paragraphs 161–162 above. The referenced infringement chart is based on Plaintiff's current understanding of the Samsung Smartphones based on information publicly available at the time of filing this Complaint. The selection of claims and products is exemplary and should not be considered limiting of Samsung's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

179. Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '156 Patent, including at least claims 16 and 17, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

180. Samsung's customers and other end-users directly infringe at least claims 16 and 17 at least by using infringing devices comprised of Samsung Smartphones incorporating laser AF. End-users have used and continue to use the subject matter of claims 16 and 17 by placing the Samsung Smartphones into service, operating the camera systems, and obtaining beneficial use of each element of the claimed inventions. End-users initiate use of the claimed inventions by operating the camera system of a Samsung Smartphone, which performs laser AF to measure the distance of a subject and focus the lenses of the camera system. Samsung's customers and other end-users also directly infringe at least claims 16 and 17 at least by using Samsung Smartphones, and distributors and resellers directly infringe those claims by offering for sale and selling such Samsung Smartphones.

181. Samsung has actual notice of the '156 Patent and the infringement alleged herein at least upon the service of this Complaint. The timing, circumstances, and extent of Samsung obtaining actual knowledge of the '156 Patent prior to commencement of this lawsuit will be confirmed during discovery.

182. Samsung actively induces third parties, including customers and end-users, to use infringing Samsung Smartphones operating in their normal and customary way and in accordance with their intended functionality and purpose. Samsung induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Samsung Smartphones, and providing instructions, documentation, and other

information to customers and end-users suggesting they use the Samsung Smartphones in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Samsung induces direct infringement by such third parties by (i) selling the Samsung Smartphones to third parties when such products are designed for use in a manner that infringes the '156 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '156 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the laser AF features of Samsung Smartphones are operated such that each element of the patented inventions are present in a manner dictated by Samsung; (iv) providing technical support, information, and instructions for operating the Samsung Smartphones in their customary way; (v) advertising and promoting the Samsung Smartphones; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Samsung Smartphones including the laser AF features thereof.

183.    Upon gaining knowledge of the '156 Patent, it became apparent to Samsung that the manufacture, sale, importing, offer for sale, or use of the Samsung Smartphones infringe the '156 Patent.  Despite knowledge of the '156 Patent, Samsung continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner which infringes the '156 Patent.  Samsung performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '156 Patent.  Samsung directly benefits from and actively and knowingly encourages customers and end-users to use infringing devices in the Samsung Smartphones.  On information and belief, Samsung will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows

or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '156 Patent.

184.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing smartphones pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Samsung Smartphones incorporating laser AF hardware and software, knowing that such devices and software are material to the inventions claimed by at least claims 16 and 17 of the '156 Patent, are especially made or especially adapted for use in infringing the patented devices and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

185.    Samsung's direct and indirect infringement of the '156 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.  Unless Samsung ceases its infringing activities, it will continue to injure Plaintiff.

186.    On information and belief, Samsung acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Samsung should have known about it.  Samsung continues to infringe the '156 Patent by making, using, selling, offering for sale and/or importing in the United States the Samsung Products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights.  Samsung continues its infringement notwithstanding actual knowledge of the '156 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '156 Patent.  Samsung's infringement of the '156 Patent, following its

47

knowledge of the '156 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

**Count III: Infringement of the '311 Patent**
**(Against All Defendants)**

187.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 186 above.

188.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '311 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing smartphone devices that embody the inventions claimed in the '311 Patent, in particular, at least claims 15, 16, and 19, within the United States and within this District.  Samsung has been and is engaged in one or more of these direct infringing activities related to its Samsung Smartphones incorporating laser AF.  Samsung sells the Samsung Smartphones to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales.  On information and belief, Plaintiff further alleges that Samsung employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 15, 16, and 19 of the '311 Patent in connection with development, testing, and/or demonstration of Samsung Smartphones incorporating laser AF.

189.    Notice of the factual bases of Plaintiff's allegations of infringement of the '311 Patent by the Samsung Smartphones is provided in the claim chart attached hereto as Exhibit 11. The claim chart demonstrates how the '311 Patent is infringed by reference to particular Samsung

Smartphones, which, on information and belief, are representative of the infringing aspects of at least the Samsung Smartphones identified in Paragraphs 161–162 above. The referenced infringement chart is based on Plaintiff's current understanding of the Samsung Smartphones based on information publicly available at the time of filing this Complaint. The selection of claims and products is exemplary and should not be considered limiting of Samsung's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

190. Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '311 Patent, including at least claims 15, 16, and 19, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

191. Samsung's customers and other end-users directly infringe at least claims 15, 16, and 19 at least by using infringing devices comprised of Samsung Smartphones incorporating laser AF.  End-users have used and continue to use the subject matter of claims 15, 16, and 19 by placing the Samsung Smartphones into service, operating the camera systems, and obtaining beneficial use of each element of the claimed inventions. End-users initiate use of the claimed inventions by operating the camera system of a Samsung Smartphone, which performs laser AF to measure the distance of a subject and focus the lenses of the camera system.  Samsung's customers and other end-users also directly infringe at least claims 15, 16, and 19 at least by using Samsung Smartphones, and distributors and resellers directly infringe those claims by offering for sale and selling such Samsung Smartphones.

192.    Samsung has actual notice of the '311 Patent and the infringement alleged herein at least upon the service of this Complaint.  The timing, circumstances, and extent of Samsung obtaining actual knowledge of the '311 Patent prior to commencement of this lawsuit will be confirmed during discovery.

193.    Samsung actively induces third parties, including customers and end-users, to use infringing Samsung Smartphones operating in their normal and customary way and in accordance with their intended functionality and purpose.  Samsung induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Samsung Smartphones, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Samsung Smartphones in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Samsung induces direct infringement by such third parties by (i) selling the Samsung Smartphones to third parties when such products are designed for use in a manner that infringes the '311 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '311 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the laser AF features of Samsung Smartphones are operated such that each element of the patented inventions are present in a manner dictated by Samsung; (iv) providing technical support, information, and instructions for operating the Samsung Smartphones in their customary way; (v) advertising and promoting the Samsung Smartphones; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Samsung Smartphones including the laser AF features thereof.

194. Upon gaining knowledge of the '311 Patent, it became apparent to Samsung that the manufacture, sale, importing, offer for sale, or use of the Samsung Smartphones infringe the '311 Patent. Despite knowledge of the '311 Patent, Samsung continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner which infringes the '311 Patent. Samsung performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '311 Patent. Samsung directly benefits from and actively and knowingly encourages customers and end-users to use infringing devices in the Samsung Smartphones. On information and belief, Samsung will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '311 Patent.

195. Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing smartphones pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Samsung Smartphones incorporating laser AF hardware and software, knowing that such devices and software are material to the inventions claimed by at least claims 15, 16, and 19 of the '311 Patent, are especially made or especially adapted for use in infringing the patented devices and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

196. Samsung's direct and indirect infringement of the '311 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Samsung ceases its infringing activities, it will continue to injure Plaintiff.

197.     On information and belief, Samsung acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Samsung should have known about it.  Samsung continues to infringe the '311 Patent by making, using, selling, offering for sale and/or importing in the United States the Samsung Products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights.  Samsung continues its infringement notwithstanding actual knowledge of the '311 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '311 Patent.  Samsung's infringement of the '311 Patent, following its knowledge of the '311 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

**Count IV: Infringement of the '805 Patent**
**(Against All Defendants)**

198.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 197 above.

199.     Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '305 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing smartphone devices that embody the inventions claimed in the '305 Patent, in particular, at least claims 1–4, within the United States and within this District.  Samsung has been and is engaged in one or more of these direct infringing activities related to its Samsung Smartphones incorporating laser AF.  Samsung sells the Samsung

Smartphones to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. On information and belief, Plaintiff further alleges that Samsung employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 1–4 of the '305 Patent in connection with development, testing, and/or demonstration of Samsung Smartphones incorporating laser AF.

200. Notice of the factual bases of Plaintiff's allegations of infringement of the '305 Patent by the Samsung Smartphones is provided in the claim chart attached hereto as Exhibit 12. The claim chart demonstrates how the '305 Patent is infringed by reference to particular Samsung Smartphones, which, on information and belief, are representative of the infringing aspects of at least the Samsung Smartphones identified in Paragraphs 161–162 above. The referenced infringement chart is based on Plaintiff's current understanding of the Samsung Smartphones based on information publicly available at the time of filing this Complaint. The selection of claims and products is exemplary and should not be considered limiting of Samsung's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

201. Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '305 Patent, including at least claims 1–4, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

202.   Samsung's customers and other end-users directly infringe at least claims 1–4 at least by using infringing devices comprised of Samsung Smartphones incorporating laser AF. End-users have used and continue to use the subject matter of claims 1–4 by placing the Samsung Smartphones into service, operating the camera systems, and obtaining beneficial use of each element of the claimed inventions. End-users initiate use of the claimed inventions by operating the camera system of a Samsung Smartphone, which performs laser AF to measure the distance of a subject and focus the lenses of the camera system. Samsung's customers and other end-users also directly infringe at least claims 1–4 at least by using Samsung Smartphones, and distributors and resellers directly infringe those claims by offering for sale and selling such Samsung Smartphones.

203.   Samsung has actual notice of the '305 Patent and the infringement alleged herein at least upon the service of this Complaint. The timing, circumstances, and extent of Samsung obtaining actual knowledge of the '305 Patent prior to commencement of this lawsuit will be confirmed during discovery.

204.   Samsung actively induces third parties, including customers and end-users, to use infringing Samsung Smartphones operating in their normal and customary way and in accordance with their intended functionality and purpose. Samsung induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Samsung Smartphones, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Samsung Smartphones in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Samsung induces direct infringement by such third parties by (i) selling the Samsung Smartphones to third

54

parties when such products are designed for use in a manner that infringes the '305 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '305 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the laser AF features of Samsung Smartphones are operated such that each element of the patented inventions are present in a manner dictated by Samsung; (iv) providing technical support, information, and instructions for operating the Samsung Smartphones in their customary way; (v) advertising and promoting the Samsung Smartphones; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Samsung Smartphones including the laser AF features thereof.

205.    Upon gaining knowledge of the '305 Patent, it became apparent to Samsung that the manufacture, sale, importing, offer for sale, or use of the Samsung Smartphones infringe the '305 Patent.  Despite knowledge of the '305 Patent, Samsung continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner which infringes the '305 Patent.  Samsung performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '305 Patent.  Samsung directly benefits from and actively and knowingly encourages customers and end-users to use infringing devices in the Samsung Smartphones.  On information and belief, Samsung will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '305 Patent.

206.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing smartphones pursuant to 35 U.S.C. § 271(c) in

this District and elsewhere in the United States at least by providing Samsung Smartphones incorporating laser AF hardware and software, knowing that such devices and software are material to the inventions claimed by at least claims 1–4 of the '305 Patent, are especially made or especially adapted for use in infringing the patented devices and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

207.    Samsung's direct and indirect infringement of the '305 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.  Unless Samsung ceases its infringing activities, it will continue to injure Plaintiff.

208.    On information and belief, Samsung acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Samsung should have known about it.  Samsung continues to infringe the '305 Patent by making, using, selling, offering for sale and/or importing in the United States the Samsung Products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights.  Samsung continues its infringement notwithstanding actual knowledge of the '305 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '305 Patent.  Samsung's infringement of the '305 Patent, following its knowledge of the '305 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

**Count V: Infringement of the '291 Patent**
**(Against All Defendants)**

209.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 208 above.

210.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '291 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing smartphone devices that embody the inventions claimed in the '291 Patent, in particular, at least claims 1, 5, 8, and 9, within the United States and within this District.  Samsung has been and is engaged in one or more of these direct infringing activities related to its Samsung Smartphones incorporating laser AF.  Samsung sells the Samsung Smartphones to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales.  On information and belief, Plaintiff further alleges that Samsung employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 1, 5, 8, and 9 of the '291 Patent in connection with development, testing, and/or demonstration of Samsung Smartphones incorporating laser AF.

211.    Notice of the factual bases of Plaintiff's allegations of infringement of the '291 Patent by the Samsung Smartphones is provided in the claim chart attached hereto as Exhibit 13. The claim chart demonstrates how the '291 Patent is infringed by reference to particular Samsung Smartphones, which, on information and belief, are representative of the infringing aspects of at least the Samsung Smartphones identified in Paragraphs 161–162 above. The referenced infringement chart is based on Plaintiff's current understanding of the Samsung Smartphones based

on information publicly available at the time of filing this Complaint. The selection of claims and products is exemplary and should not be considered limiting of Samsung's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

212. Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '291 Patent, including at least claims 1, 5, 8, and 9, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

213. Samsung's customers and other end-users directly infringe at least claims 1, 5, 8, and 9 at least by using infringing devices comprised of Samsung Smartphones incorporating laser AF. End-users have used and continue to use the subject matter of claims 1, 5, 8, and 9 by placing the Samsung Smartphones into service, operating the camera systems, and obtaining beneficial use of each element of the claimed inventions. End-users initiate use of the claimed inventions by operating the camera system of a Samsung Smartphone, which performs laser AF to measure the distance of a subject and focus the lenses of the camera system. Samsung's customers and other end-users also directly infringe at least claims 1, 5, 8, and 9 at least by using Samsung Smartphones, and distributors and resellers directly infringe those claims by offering for sale and selling such Samsung Smartphones.

214. Samsung has actual notice of the '291 Patent and the infringement alleged herein at least upon the service of this Complaint. The timing, circumstances, and extent of Samsung

obtaining actual knowledge of the '291 Patent prior to commencement of this lawsuit will be confirmed during discovery.

215.    Samsung actively induces third parties, including customers and end-users, to use infringing Samsung Smartphones operating in their normal and customary way and in accordance with their intended functionality and purpose.  Samsung induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Samsung Smartphones, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Samsung Smartphones in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Samsung induces direct infringement by such third parties by (i) selling the Samsung Smartphones to third parties when such products are designed for use in a manner that infringes the '291 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '291 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the laser AF features of Samsung Smartphones are operated such that each element of the patented inventions are present in a manner dictated by Samsung; (iv) providing technical support, information, and instructions for operating the Samsung Smartphones in their customary way; (v) advertising and promoting the Samsung Smartphones; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Samsung Smartphones including the laser AF features thereof.

216.    Upon gaining knowledge of the '291 Patent, it became apparent to Samsung that the manufacture, sale, importing, offer for sale, or use of the Samsung Smartphones infringe the '291 Patent.  Despite knowledge of the '291 Patent, Samsung continues to encourage, instruct,

enable, and otherwise cause its customers and other third parties to use its products in a manner which infringes the '291 Patent. Samsung performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '291 Patent. Samsung directly benefits from and actively and knowingly encourages customers and end-users to use infringing devices in the Samsung Smartphones. On information and belief, Samsung will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '291 Patent.

217. Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing smartphones pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Samsung Smartphones incorporating laser AF hardware and software, knowing that such devices and software are material to the inventions claimed by at least claims 1, 5, 8, and 9 of the '291 Patent, are especially made or especially adapted for use in infringing the patented devices and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

218. Samsung's direct and indirect infringement of the '291 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Samsung ceases its infringing activities, it will continue to injure Plaintiff.

219. On information and belief, Samsung acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Samsung should have known about it. Samsung continues to infringe

the '291 Patent by making, using, selling, offering for sale and/or importing in the United States the Samsung Products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Samsung continues its infringement notwithstanding actual knowledge of the '291 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '291 Patent. Samsung's infringement of the '291 Patent, following its knowledge of the '291 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## Count VI: Infringement of the '788 Patent
## (Against All Defendants)

220. Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 219 above.

221. Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '788 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing smartphone devices that embody the inventions claimed in the '788 Patent, in particular, at least claims 1 and 5, within the United States and within this District. Samsung has been and is engaged in one or more of these direct infringing activities related to its Samsung Smartphones incorporating laser AF. Samsung sells the Samsung Smartphones to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. On information and belief, Plaintiff further alleges that Samsung employees, such as product development and testing engineers and/or sales and

61

marketing personnel, have and continue directly infringe at least claims 1 and 5 of the '788 Patent in connection with development, testing, and/or demonstration of Samsung Smartphones incorporating laser AF.

222.    Notice of the factual bases of Plaintiff's allegations of infringement of the '788 Patent by the Samsung Smartphones is provided in the claim chart attached hereto as Exhibit 14. The claim chart demonstrates how the '788 Patent is infringed by reference to particular Samsung Smartphones, which, on information and belief, are representative of the infringing aspects of at least the Samsung Smartphones identified in Paragraphs 161–162 above. The referenced infringement chart is based on Plaintiff's current understanding of the Samsung Smartphones based on information publicly available at the time of filing this Complaint. The selection of claims and products is exemplary and should not be considered limiting of Samsung's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

223.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '788 Patent, including at least claims 1 and 5, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

224.    Samsung's customers and other end-users directly infringe at least claims 1 and 5 at least by using infringing devices comprised of Samsung Smartphones incorporating laser AF. End-users have used and continue to use the subject matter of claims 1 and 5 by placing the Samsung Smartphones into service, operating the camera systems, and obtaining beneficial use of

62

each element of the claimed inventions. End-users initiate use of the claimed inventions by operating the camera system of a Samsung Smartphone, which performs laser AF to measure the distance of a subject and focus the lenses of the camera system.  Samsung's customers and other end-users also directly infringe at least claims 1 and 5 at least by using Samsung Smartphones, and distributors and resellers directly infringe those claims by offering for sale and selling such Samsung Smartphones.

225.    Samsung has actual notice of the '788 Patent and the infringement alleged herein at least upon the service of this Complaint.  The timing, circumstances, and extent of Samsung obtaining actual knowledge of the '788 Patent prior to commencement of this lawsuit will be confirmed during discovery.

226.    Samsung actively induces third parties, including customers and end-users, to use infringing Samsung Smartphones operating in their normal and customary way and in accordance with their intended functionality and purpose.  Samsung induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Samsung Smartphones, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Samsung Smartphones in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Samsung induces direct infringement by such third parties by (i) selling the Samsung Smartphones to third parties when such products are designed for use in a manner that infringes the '788 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '788 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the laser AF features of Samsung Smartphones are operated such that each

element of the patented inventions are present in a manner dictated by Samsung; (iv) providing technical support, information, and instructions for operating the Samsung Smartphones in their customary way; (v) advertising and promoting the Samsung Smartphones; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Samsung Smartphones including the laser AF features thereof.

227.  Upon gaining knowledge of the '788 Patent, it became apparent to Samsung that the manufacture, sale, importing, offer for sale, or use of the Samsung Smartphones infringe the '788 Patent.  Despite knowledge of the '788 Patent, Samsung continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner which infringes the '788 Patent.  Samsung performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '788 Patent.  Samsung directly benefits from and actively and knowingly encourages customers and end-users to use infringing devices in the Samsung Smartphones.  On information and belief, Samsung will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '788 Patent.

228.  Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing smartphones pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Samsung Smartphones incorporating laser AF hardware and software, knowing that such devices and software are material to the inventions claimed by at least claims 1 and 5 of the '788 Patent, are especially made

64

or especially adapted for use in infringing the patented devices and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

229.     Samsung's direct and indirect infringement of the '788 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.  Unless Samsung ceases its infringing activities, it will continue to injure Plaintiff.

230.     On information and belief, Samsung acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Samsung should have known about it.  Samsung continues to infringe the '788 Patent by making, using, selling, offering for sale and/or importing in the United States the Samsung Products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights.  Samsung continues its infringement notwithstanding actual knowledge of the '788 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '788 Patent.  Samsung's infringement of the '788 Patent, following its knowledge of the '788 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

**Count VII: Infringement of the '820 Patent**
**(Against All Defendants)**

231.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 230 above.

232.     Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '820 Patent pursuant to 35 U.S.C.

65

§ 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing devices that embody the inventions claimed in the '820 Patent, in particular, at least claims 9 and 10, within the United States and within this District. Samsung has been and is engaged in one or more of these direct infringing activities related to its Samsung XR Headsets, which performs dToF to measure distance.  Samsung sells the Samsung XR Headsets to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales.  On information and belief, Plaintiff further alleges that Samsung employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 9 and 10 of the '820 Patent in connection with development, testing, and/or demonstration of the Samsung XR Headsets.

233.    Notice of the factual bases of Plaintiff's allegations of infringement of the '820 Patent by the Samsung XR Headsets is provided in the claim chart attached hereto as Exhibit 15. The claim chart demonstrates how the '820 Patent is infringed by reference to particular Samsung XR Headsets, which, on information and belief, are representative of the infringing aspects of at least the Samsung XR Headsets identified in Paragraphs 163–164 above. The referenced infringement chart is based on Plaintiff's current understanding of the Samsung XR Headsets based on information publicly available at the time of filing this Complaint. The selection of claims and products is exemplary and should not be considered limiting of Samsung's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

66

234.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '820 Patent, including at least claims 9 and 10, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

235.    Samsung's customers and other end-users directly infringe at least claims 9 and 10 at least by using the Samsung XR Headsets in its normal and intended manner.  End-users have used and continue to use the subject matter of claims 9 and 10 by placing the Samsung XR Headsets into service, wearing the headset, and obtaining beneficial use of each element of the claimed inventions. End-users initiate use of the claimed inventions by wearing and operating the Samsung XR Headset, which performs dToF by emitting light pulses and directly measuring the time it takes for reflected light to return to the sensor, thereby calculating the distance to objects in the user's environment.  Samsung's customers and other end-users also directly infringe at least claims 9 and 10 at least by using Samsung XR Headsets, and distributors and resellers directly infringe those claims by offering for sale and selling such Samsung XR Headsets.

236.    Samsung has actual notice of the '820 Patent and the infringement alleged herein at least upon the service of this Complaint.  The timing, circumstances, and extent of Samsung obtaining actual knowledge of the '820 Patent prior to commencement of this lawsuit will be confirmed during discovery.

237.    Samsung actively induces third parties, including customers and end-users, to use infringing Samsung XR Headsets operating in their normal and customary way and in accordance with their intended functionality and purpose.  Samsung induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Samsung XR Headsets, and providing instructions, documentation, and other

information to customers and end-users suggesting they use the Samsung XR Headsets in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Samsung induces direct infringement by such third parties by (i) selling the Samsung XR Headsets to third parties when such products are designed for use in a manner that infringes the '820 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '820 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the dToF features of the Samsung XR Headset are operated such that each element of the patented inventions are present in a manner dictated by Samsung; (iv) providing technical support, information, and instructions for operating the Samsung XR Headsets in their customary way; (v) advertising and promoting the Samsung XR Headsets; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Samsung XR Headsets including the dToF features thereof.

238.    Upon gaining knowledge of the '820 Patent, it became apparent to Samsung that the manufacture, sale, importing, offer for sale, or use of the Samsung XR Headsets infringe the '820 Patent.  Despite knowledge of the '820 Patent, Samsung continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner which infringes the '820 Patent.  Samsung performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '820 Patent.  Samsung directly benefits from and actively and knowingly encourages customers and end-users to use infringing devices in the Samsung XR Headsets.  On information and belief, Samsung will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should

know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '820 Patent.

239.   Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing headsets pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Samsung XR Headsets incorporating dToF hardware and software, knowing that such devices and software are material to the inventions claimed by at least claims 9 and 10 of the '820 Patent, are especially made or especially adapted for use in infringing the patented devices and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

240.   Samsung's direct and indirect infringement of the '820 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.  Unless Samsung ceases its infringing activities, it will continue to injure Plaintiff.

241.   On information and belief, Samsung acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Samsung should have known about it.  Samsung continues to infringe the '820 Patent by making, using, selling, offering for sale and/or importing in the United States the Samsung XR Headsets and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights.  Samsung continues its infringement notwithstanding actual knowledge of the '820 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '820 Patent. Samsung's infringement of the '820 Patent, following its

69

knowledge of the '820 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

### Count VIII: Infringement of the '305 Patent
### (Against All Defendants)

242.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 241 above.

243.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '305 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing devices that embody the inventions claimed in the '305 Patent, in particular, at least claims 1–7, within the United States and within this District.  Samsung has been and is engaged in one or more of these direct infringing activities related to its Samsung XR Headsets, which performs dToF to measure distance.  Samsung sells the Samsung XR Headsets to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales.  On information and belief, Plaintiff further alleges that Samsung employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 1–7 of the '305 Patent in connection with development, testing, and/or demonstration of the Samsung XR Headsets.

244.    Notice of the factual bases of Plaintiff's allegations of infringement of the '305 Patent by the Samsung XR Headsets is provided in the claim chart attached hereto as Exhibit 15. The claim chart demonstrates how the '305 Patent is infringed by reference to particular Samsung XR Headsets, which, on information and belief, are representative of the infringing aspects of at least the Samsung XR Headsets identified in Paragraphs 163–164 above. The referenced

infringement chart is based on Plaintiff's current understanding of the Samsung XR Headsets based on information publicly available at the time of filing this Complaint. The selection of claims and products is exemplary and should not be considered limiting of Samsung's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

245. Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '305 Patent, including at least claims 1–7, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

246. Samsung's customers and other end-users directly infringe at least claims 1–7 at least by using the Samsung XR Headsets in its normal and intended manner. End-users have used and continue to use the subject matter of claims 1–7 by placing the Samsung XR Headsets into service, wearing the headset, and obtaining beneficial use of each element of the claimed inventions. End-users initiate use of the claimed inventions by wearing and operating the Samsung XR Headset, which performs dToF by emitting light pulses and directly measuring the time it takes for reflected light to return to the sensor, thereby calculating the distance to objects in the user's environment. Samsung's customers and other end-users also directly infringe at least claims 1–7 at least by using Samsung XR Headsets, and distributors and resellers directly infringe those claims by offering for sale and selling such Samsung XR Headsets.

247. Samsung has actual notice of the '305 Patent and the infringement alleged herein at least upon the service of this Complaint. The timing, circumstances, and extent of Samsung

obtaining actual knowledge of the '305 Patent prior to commencement of this lawsuit will be confirmed during discovery.

248.   Samsung actively induces third parties, including customers and end-users, to use infringing Samsung XR Headsets operating in their normal and customary way and in accordance with their intended functionality and purpose.  Samsung induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Samsung XR Headsets, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Samsung XR Headsets in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Samsung induces direct infringement by such third parties by (i) selling the Samsung XR Headsets to third parties when such products are designed for use in a manner that infringes the '305 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '305 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the dToF features of the Samsung XR Headset are operated such that each element of the patented inventions are present in a manner dictated by Samsung; (iv) providing technical support, information, and instructions for operating the Samsung XR Headsets in their customary way; (v) advertising and promoting the Samsung XR Headsets; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Samsung XR Headsets including the dToF features thereof.

249.   Upon gaining knowledge of the '305 Patent, it became apparent to Samsung that the manufacture, sale, importing, offer for sale, or use of the Samsung XR Headsets infringe the '305 Patent.  Despite knowledge of the '305 Patent, Samsung continues to encourage, instruct,

enable, and otherwise cause its customers and other third parties to use its products in a manner which infringes the '305 Patent. Samsung performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '305 Patent. Samsung directly benefits from and actively and knowingly encourages customers and end-users to use infringing devices in the Samsung XR Headsets. On information and belief, Samsung will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '305 Patent.

250.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing headsets pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Samsung XR Headsets incorporating dToF hardware and software, knowing that such devices and software are material to the inventions claimed by at least claims 1–7 of the '305 Patent, are especially made or especially adapted for use in infringing the patented devices and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

251.    Samsung's direct and indirect infringement of the '305 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Samsung ceases its infringing activities, it will continue to injure Plaintiff.

252.    On information and belief, Samsung acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Samsung should have known about it. Samsung continues to infringe

the '305 Patent by making, using, selling, offering for sale and/or importing in the United States the Samsung XR Headsets and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights.  Samsung continues its infringement notwithstanding actual knowledge of the '305 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '305 Patent. Samsung's infringement of the '305 Patent, following its knowledge of the '305 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## JURY DEMANDED

253.   In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues triable.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court enter judgment in its favor and against Defendants as follows:

i.      finding that Defendants have directly and/or indirectly infringed or are directly and/or indirectly infringing one or more claims of the Asserted Patents;

ii.     awarding Plaintiff damages in accordance with 35 U.S.C. § 284, or as otherwise permitted by law, including treble damages based on Defendants' willful infringement, and damages for any continued post-verdict infringement;

iii.    awarding Plaintiff pre-judgment and post-judgment interest on the damages award and costs;

iv.        declaring this case exceptional and awarding Plaintiff its reasonable attorney fees in accordance with 35 U.S.C. § 285, or as otherwise permitted by law;

v.        a permanent injunction enjoining each Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert or privity with any of them from infringing or inducing or contributing to the infringement of the Asserted Patent without additional compensation to Plaintiff in an amount to be determined by the Court; and

vi.        awarding all such other costs and further relief the Court determines to be just and equitable.

Dated: May 1, 2026

*/s/ Daniel S. Stringfield w/ permission*
*William E. Davis, III*
William E. Davis, III
Texas Bar No. 24047416
bdavis@davisfirm.com
**DAVIS FIRM, PC**
213 N. Fredonia Street, Suite 230
Longview, TX 75601
Tel: (903) 230-9090
Fax: (903) 230-9661

Daniel S. Stringfield (Admitted E.D. Tex.)
Illinois Bar No. 6293893
dstringfield@nixonpeabody.com
Timothy P. Maloney (Admitted E.D. Tex.)
Illinois Bar No. 6216483
tmaloney@nixonpeabody.com
Daniel D. Georgiev (Admitted E.D. Tex.)
Illinois Bar No. 6326950
Texas Bar No. 24136166
Peter Krusiewicz (Admitted E.D. Tex.)
Illinois Bar No. 6342444
**NIXON PEABODY LLP**
70 West Madison
Suite 5200
Chicago, IL 60602
Tel: (312) 977-4400
Fax: (312) 977-4405

Elizabeth M. Chiaviello (Admitted E.D. Tex.)
Texas Bar No. 24088913
D.C. Bar No. 90033239
echiaviello@nixonpeabody.com
Benjamin R. Holt (Admitted E.D. Tex.)
D.C. Bar No. 1048285
bholt@nixonpeabody.com
**NIXON PEABODY LLP**
799 9th Street NW
Suite 500
Washington, D.C. 20001
Tel: (202) 585-8000
Fax: (202) 585-8080

Alec M. Royka (Admitted E.D. Tex.)
Virginia Bar No. 95,959
**NIXON PEABODY LLP**
677 Broadway
10th Floor
Albany, NY 12207
Tel: (518) 427-2650
Fax: (833) 834-7265


***Attorneys for Plaintiff Omni MedSci, Inc.***